**SIGNED THIS: February 26, 2014**

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | Case No. 12-72028 |
| EIY CO., INC., ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| A. CLAY COX, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 13-7019 |
| ) | |
| HEALTH ALLIANCE, ) | |
| ) | |
| Defendant. ) | |

# O P I N I O N

Before the Court is the Defendant's Motion for Summary Judgment requesting judgment in

-1-

its favor as to all relief sought in a complaint filed against it by the Trustee seeking to recover preferential payments made by the Debtor. Because the Defendant has established as a matter of law that one of the payments it received from the Debtor is not subject to being avoided and recovered by the Trustee, the Motion will be granted in part. Because the issues related to the other payment received by the Defendant cannot be resolved as a matter of law on the record presented, an evidentiary hearing will be scheduled.

## I. Factual and Procedural Background

EIY Co., Inc. ("Debtor") filed its voluntary petition under Chapter 7 on September 11, 2012. A. Clay Cox was appointed as the Chapter 7 trustee ("Trustee") and continues to serve in that capacity. On March 20, 2013, the Trustee filed his adversary complaint against Health Alliance, which is a provider of individual and group health insurance services. The Trustee claims that the Debtor made two payments totaling $7483 to Health Alliance during the 90-day period before filing, and that those payments are avoidable and recoverable as preferential payments. Health Alliance answered the complaint and asserted affirmative defenses, claiming that the payments it received were made in the ordinary course of business and were intended to be contemporaneous exchanges for value.

After completion of discovery, Health Alliance filed its Motion for Summary Judgment. The Trustee has responded, and the issues have been fully briefed by the parties. The material facts are not in dispute.

The Debtor and Health Alliance entered into a contract for group health insurance coverage for the Debtor's employees effective April 1, 2012. On April 12, 2012, the Debtor paid the April premium. On May 1, 2012, Health Alliance issued an invoice in the amount of $4774 for the

Debtor's group coverage for May 2012. On June 1, 2012, another invoice was issued by Health Alliance to the Debtor for $9094, which included the then-past-due amount from the May invoice and the June premium of $4320.

According to Health Alliance's records, the Debtor paid $4187 on June 15, 2012, and an individual employee paid $587 on that same date, resulting in full payment of the $4774 due on the May invoice. On June 25, 2012, the Debtor paid $3296 and the same individual employee paid $587, resulting in full payment of the June premium. The Debtor cancelled the health insurance coverage effective July 1, 2012.

The health insurance policy issued by Health Alliance to the Debtor provided that the insurance premiums were due on the first of each month. The policy also provided a 31-day grace period for the Debtor to make the premium payments without penalty. Health Alliance sent a letter to the Debtor, which was received on June 13, 2012, notifying the Debtor that it intended to terminate the group insurance coverage due to non-payment of the May invoice. Because the Debtor responded by making payment on June 15th, the termination did not occur.

The Trustee says that both the June 15th and June 25th payments from the Debtor to Health Alliance are avoidable preferences. Health Alliance says that both payments were made in the ordinary course of business and were intended to be contemporaneous exchanges for value. As indicated above, the legal issues have been briefed and the Motion is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. Proceedings to determine, avoid, and recover preferences are core proceedings. *See* 28 U.S.C. §157(b)(2)(F).

### III. Legal Analysis

### A. Summary Judgment Standards

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56 which is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056. *See* Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056. Summary judgment is an encouraged method for resolving cases, and should be granted when there are no genuine disputes as to any material facts and a party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 327 (1986). A party moving for summary judgment has the burden of establishing that there are no material facts in dispute. *Id.* The movant must also establish that the controlling substantive law supports a result in its favor. *See ANR Advance Transp. Co. v. Int'l Brotherhood of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998). The party opposing a motion for summary judgment must raise genuine and specific issues of factual or legal dispute for trial and "must do more than simply show there is some metaphysical doubt as to the material facts." *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Local Rules of the United States District Court for the Central District of Illinois apply to proceedings before this Court. *See* CDIL-LR1.1(C). Motions for summary judgment must strictly comply with the Local Rules. *See* CDIL-LR7.1(D); *Richardson v. MBNA America Bank, N.A. (In re Clayton)*, 369 B.R. 383, 388 (Bankr. C.D. Ill. 2007); *Johnston v. Campbell (In re Campbell)*, 372 B.R. 886, 890 (Bankr. C.D. Ill. 2007).

Both parties have substantially complied with the Local Rules. The parties have agreed that the facts presented by Health Alliance in support of its Motion are not in dispute. The Trustee challenges the inferences that may be drawn from some of the undisputed facts and denies that Health Alliance is entitled to judgment as a matter of law. These contested issues have been fully briefed.

As will be explained in detail below, the granting of partial summary judgment in favor of Health Alliance is appropriate.

### B. Avoidance/Recovery of Preferential Payments

Generally, a trustee may avoid a transfer made by a debtor to a creditor within 90 days of the case filing if the payment was made on an antecedent debt while the debtor was insolvent, and the payment allowed the creditor to receive more than the creditor would otherwise have received under a Chapter 7 liquidation. *See* 11 U.S.C. §547(b). Once a trustee has avoided a transfer, the trustee may recover the transfer from the original transferee or, under certain circumstances, from subsequent transferees. *See* 11 U.S.C. §550(a).

A trustee's power to avoid and recover transfers is limited by a number of statutory affirmative defenses. Health Alliance has raised the affirmative defenses of contemporaneous exchange for value and ordinary course of business. Those affirmative defenses are set forth in §547(c) which provides, in part:

> (c) The trustee may not avoid under this section a transfer —
>
> > (1) to the extent that such transfer was —
> >
> > > (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor, and
> > >
> > > (B) in fact a substantially contemporaneous exchange; [or]
> >
> > (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was —
> >
> > > (A) made in the ordinary course of business or

    financial affairs of the debtor and the transferee; or

     (B) made according to ordinary business terms[.]

11 U.S.C. §547(c)(1),(2).

In its Motion, Health Alliance raises only issues related to its affirmative defenses and argues that the defenses must be sustained as a matter of law. The Trustee did not file an answer to the affirmative defenses, but argues in response to the Motion that the defenses do not apply to the facts in this case. Health Alliance has the burden of proving each element of its affirmative defenses. *See* 11 U.S.C. §547(g).

### 1. Ordinary Course of Business Defense

The ordinary course of business defense requires an initial analysis of whether the debt involved in the alleged preferential payment was incurred in the ordinary course of business of both the debtor and the creditor. If the underlying debt originated outside of the ordinary course of business, such as through an insider transaction, then the ordinary course of business defense will fail regardless of the circumstances of the payments. *See Moglia v. Blocksom & Co.* (*In re Wildwood Industries, Inc.*), 2012 WL 5246507, at *6 (Bankr. C.D. Ill. Oct. 24, 2012); *Huffman v. N.J. Steel Corp.* (*In re Valley Steel Corp.*), 182 B.R. 728, 735 (Bankr. W.D. Va. 1995).

This initial issue is not contested here. The Trustee does not dispute that Health Alliance sells group health insurance policies and services such as those sold to the Debtor as a regular part of its day-to-day business operations. Likewise, the Debtor operated a business, and incurring a liability for an employee benefit such as group health insurance was an ordinary business expenditure. The indebtedness that arose from the insurance contract entered into between the Debtor and Health Alliance was incurred in the ordinary course of business of both parties.

In addition to establishing that the debt was incurred in the ordinary course of business, Health Alliance also has the burden to prove that the payments were made in the ordinary course of business of both parties, or that the payments were made according to ordinary business terms. *See* 11 U.S.C. §547(c)(2)(A),(B). In its answer to the complaint, Health Alliance raised only the affirmative defense of ordinary business terms under §547(c)(2)(B). But, in its Motion for Summary Judgment, it argues that the payments were made both in the ordinary course of business of the parties and according to ordinary business terms. The Trustee responded to both arguments and, accordingly, both will be considered.

Subparagraph (A) requires a creditor to identify the history of dealings between itself and the debtor and to provide a comparison of the payment practices during the preference period with the parties' prior course of dealings. *See* 11 U.S.C. §547(c)(2)(A); *see also Barber v. Central Bank Ill., N.A.* (*In re Trappers Creek, LLC*), 2010 WL 797022, at *4 (Bankr. C.D. Ill. Mar. 5, 2010). Sometimes referred to as a "subjective test," subparagraph (A) requires proof that the circumstances of an alleged preferential payment were actually consistent with the parties' practices before the preference period. *Id.* In considering whether a consistent history has been established, courts consider a number of factors, including (1) the length of time the parties engaged in the type of transaction at issue; (2) whether the amount or form of the preferential transfer differed from earlier practices; (3) whether the creditor engaged in any unusual collection activity; and (4) whether the creditor took advantage of the debtor's financial condition. *See Kleven v. Household Bank F.S.B.*, 334 F.3d 638, 642 (7th Cir. 2003).

Here, the parties' relationship was a scant three months. The insurance policy was issued April 1, 2012, and by July 1st, it was cancelled. Only the initial payment was paid outside of the preference period. That payment was made 11 days after it was due but still during the grace period. The June 15th payment was made 45 days after it was due and outside of the grace period. The June

25th payment was made 24 days after it was due but within the grace period. There is simply no consistent history of dealings between the parties to suggest that Health Alliance and the Debtor had established routine practices which were followed when the June 15th and June 25th payments were made. Late payments can be ordinary course payments when a consistent, regular pattern of late payments is shown. *See In re Xonics Imaging Inc.*, 837 F.2d 763, 766-67 (7th Cir. 1988). But here, Health Alliance has shown no consistency or pattern of payments whatsoever during its brief relationship with the Debtor. Health Alliance has failed to establish its entitlement to summary judgment under §547(c)(2)(A).

The defense available under subparagraph (B) requires a creditor to establish that the preferential transfer was made "within the *range* of terms that encompasses the practices in which firms similar in some general way to the creditor engage ...[.]" *In re Tolona Pizza Prods. Corp.*, 3 F.3d 1029, 1033 (7th Cir. 1993) (emphasis in original). Sometimes referred to as an "objective test," subparagraph (B) requires proof that the creditor's dealings with the debtor are at least within the outer limits of industry standards. *See* 11 U.S.C. §547(c)(2)(B); *see also In re Midway Airlines, Inc.*, 69 F.3d 792, 797 (7th Cir. 1995); *Paloian v. Quad-Tech, Inc.* (*In re GGSI Liquidation, Inc.*), 313 B.R. 770, 775 (Bankr. N.D. Ill. 2004).

Health Alliance provided as exhibits a full copy of the group health insurance policy issued to the Debtor and an affidavit from Edie Wilson, its manager of billing and enrollment. In her affidavit, Ms. Wilson detailed the payment and collection history of the Debtor's account. Further, she stated that she was familiar with the standard practices of the health insurance industry and that the allowance of grace periods and the continuation of coverage during such grace periods are standard practices. In its arguments, Health Alliance noted that the health insurance industry is regulated by state law and that both the Illinois Insurance Code and the Illinois Administrative Code require, at least to some degree, grace periods and notices before policy cancellations. *See, e.g.*, 215

ILCS 5/370(e) (notice of cancellation required); 50 ILAC 2013.40 (maintenance of coverage through grace period required).

Ms. Wilson's affidavit establishes that the group health insurance policy issued by Health Alliance to the Debtor contains terms which are within industry standards and the range of terms commonly found in such policies. Further, the Trustee does not dispute that the policy complies with Illinois law, which actually establishes the limits and range of appropriate provisions for such policies. If the policy contains standard terms — and it does — then payments made pursuant to the policy terms would fall within the ordinary course of business exception set forth at §547(c)(2)(B). The June 15th payment was not made according to the policy terms, but the June 25th payment was. Thus, the June 25th payment was made in the ordinary course of business and cannot be avoided and recovered by the Trustee.

The June 15th payment was made after the grace period and outside of the express terms set forth in the policy. A letter was sent in early June by Health Alliance to the Debtor stating an intent to cancel the policy for non-payment. Ms. Wilson says that the collection letter was standard procedure. Health Alliance argues that it was not a notice of cancellation but a required disclosure mandated by state law. The Trustee asks the Court to interpret the letter as a cancellation notice. The letter was not included with the Motion's exhibits and, although there is no dispute that it was sent, this Court cannot find that the June 15th payment made after receipt of the letter was an ordinary course payment without seeing its contents.

Regardless of whether the June 15th payment was made in the ordinary course, there is no dispute that the payment served to either continue or reinstate the policy and the Debtor's group coverage. When the June 25th payment was made, the policy was in full force and effect, and the payment was made within the terms and time frame expressly contemplated by the policy. Because the terms of the policy are within the range of industry standards, the June 25th payment made

according to those terms was made in the ordinary course of business.

In his effort to defeat Health Alliance's defense of ordinary course, the Trustee asserts that this Court's opinion in *Moglia v. Blocksom & Co.* ("*Blocksom*") holds that more evidence about industry standards than was presented here is required. *See Blocksom*, 2012 WL 5246507, at *8-9. The facts of *Blocksom* are distinguishable. There, the payment terms between the creditor and debtor were "net 60" but their transactional history showed payments made between 20 to 110 days before the preference period and between 54 and 112 days during the preference period. *Id.* at *7. This Court found that witness testimony that many similar businesses in the textile industry have cash flow problems which result in late payments was inadequate to establish industry standards sufficient to support a finding that the wide range of late payments were made in the ordinary course of business. *Id.* at *8. Here, not only did a witness present an affidavit as to industry standards, but also the payment terms between Health Alliance and the Debtor are spelled out in detail in the insurance policy, and the parameters of the industry standards at issue are regulated by state law. *Blocksom* does not compel rejection of the affirmative defense of ordinary course of business for the June 25th payment.

The Trustee also has raised issues regarding the separate payments made on June 15th and June 25th by an employee. The Trustee suggests that these separate payments take the transactions on those dates out of the ordinary course. But, his argument is not compelling.

Employees, or perhaps more appropriately, former employees, are often entitled under both federal and state law to continuing health insurance coverage, provided that they pay their own premiums. *See* 29 U.S.C. §1161; 215 ILCS 5/367e. The Trustee has completed discovery and has access to the Debtor's books, yet makes no claim that the payments here are anything other than legitimate payments by an employee or former employee who is obligated to pay his own premiums.

The payment Health Alliance credits as received from the employee on June 15th was made

by a check dated April 27, 2012. The payment Health Alliance credits as received June 25th is from a check dated May 26, 2012. The check dates suggest that the employee delivered timely payments to the Debtor even if the Debtor did not remit the checks in a timely manner to Health Alliance. The April check has a notation of the group plan number and the May check contains a memo that it is for the June payment. Both checks are made payable directly to Health Alliance. The individual upon whose account the checks are drawn is shown on the list of covered individuals on the Health Alliance billings, and the monthly premium amount for that individual on the bills matches the check amounts to the penny. The Trustee's statement that he "doubts" the payments were made for the purposes alleged and that additional evidence is needed to establish that the individual checks were intended to be payments which should be credited to the Debtor's account with Health Alliance is without merit. The local rules require citation to the record to raise an issue of disputed fact, and more than doubt must be alleged. *See* CDIL-LR7.1(D); *Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 586. The fact that a separate payment was made by an employee to Health Alliance on June 25th does not cause the payment made by the Debtor to Health Alliance on that date to be out of the ordinary course of business.

### 2. Contemporaneous Exchange for Value

To establish the affirmative defense of a contemporaneous exchange for value, Health Alliance must establish that it provided new value to the Debtor in exchange for payments that were intended to be contemporaneous with the receipt of new value and were, in fact, substantially contemporaneous. 11 U.S.C. §547(c)(1); *see also Everlock Fastening Systems, Inc. v. Health Alliance Plan* (*In re Everlock Fastening Systems, Inc.*), 171 B.R. 251, 254-55 (Bankr. E.D. Mich. 1994).

Although Health Alliance raised the affirmative defense as to both payments in its answer,

it did not argue in its Motion that the June 15th payment is covered by the defense. The affirmative defense as it relates to the June 15th payment may be addressed at trial. Further, because the June 25th payment has already been found to have been made in the ordinary course of business and, therefore, not subject to avoidance and recovery, there is no reason to reach the issue of whether it was also a contemporaneous exchange for value. Thus, despite the extensive briefing on the issue by the parties, no further discussion of the defense is required here.

### IV. Conclusion

The Debtor's payment to Health Alliance of $3296 on June 25, 2012, was made in the ordinary course of business. Summary judgment will be granted to Health Alliance on that issue. Health Alliance did not establish in its Motion for Summary Judgment that the payment made to it by the Debtor on June 15, 2012, in the amount of $4187, was either made in the ordinary course of business or was a contemporaneous exchange for value. Accordingly, summary judgment must be denied as to those issues. An evidentiary hearing will be scheduled.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###